## ROBERTS *v.* ROBERTS.

Where a woman sued a man for temporary alimony, claiming that she had entered into a common-law marriage with him a few days before the application was filed, and where upon the hearing the respondent positively denied entering into any marriage with the applicant, it was error to exclude from evidence an affidavit tending to disprove the truth of the claim of marriage upon which her application was based.

Argued January 6, — Decided February 5, 1902.

Petition for alimony.  Before Judge Janes.  Polk superior court.  November 9, 1901.

*Blance, Irwin & Wright* and  *A. C. King*, for plaintiff in error. *Janes & Hunt* and *Sanders & Davis*, contra.

SIMMONS, C. J.  Mrs. Donia Roberts filed her application for alimony against John R. Roberts.  In this application she alleged that she and Roberts were married on October 17, 1900, in Atlanta, Georgia, and lived together as husband and wife until the 19th ; and that he had since attempted to intermarry with another woman with whom he was living.  On the trial she testified that she and Roberts came on different trains from Cedartown to At-

lanta, on October 17, 1900, and there went together to a certain hotel. There he brought two persons, one of whom he informed her was a minister. This latter person then married them in the presence of the other. They remained for two nights in that house and occupied the same room and bed. On October 19, they returned to Cedartown where she went to the house of a friend, while he returned to his own home. The evidence further showed that on the 21st of the same month Roberts intermarried with another woman living in Cedartown, and took her to his home to live with him. Upon learning of this marriage, the applicant sued out a warrant, signed with her maiden name, charging Roberts with seduction. She subsequently dismissed that warrant and applied for alimony. Search was made by her and her friends for the minister and witness to whose presence at the marriage she testifies, but no one answering to the names and descriptions given by her could be found. The trend of her testimony and that of her witnesses was that she was an innocent, virtuous, unsuspecting woman, and that Roberts brought her to Atlanta and went through a fraudulent form of marriage for lustful purposes. Roberts in his testimony did not deny that he went to the hotel with the applicant and remained there two nights, but he did deny most positively that any marriage ceremony was performed between them at that time and place or at any other time or place, or that he had ever agreed to take her as his wife. He admitted the marriage of October 21, two days after his return from Atlanta, and claimed that this was a valid marriage. It further appeared that the applicant had several years before been married to one Sutherlin, from whom, a short time before her alleged marriage with Roberts, she had obtained a divorce. Roberts tendered in evidence an affidavit from L. Sutherlin, who deposed in substance that he was the father of the applicant's former husband; that the applicant had, by certain tricks and devices and statements that she was pregnant and by the threats and menaces of her father and brothers, forced deponent's son to marry her; that immediately thereafter the son had left for Texas; that after the marriage and the departure of deponent's son no child was born nor did applicant ever again allude to pregnancy; and that the applicant was a shrewd, sharp woman. The affidavit recited other facts also which tended to show that the applicant was a woman of experience and skill in such matters.

This affidavit was excluded by the judge. A decree was rendered ordering Roberts to pay alimony and counsel fees: Roberts excepted, complaining of the decree rendered, and of the exclusion from evidence of the affidavit of Sutherlin.

The presumption of Roberts' innocence of crime in marrying on October 21st overcomes the legal presumption arising from mere habit and repute that there had been a former marriage. The case depended, then, upon the testimony of the two parties. Which would the court believe, one swearing that there had been a marriage and the other that there had not? It was the right of Roberts to sustain his testimony, if he could, by other evidence, or to weaken or destroy the effect of the evidence of the opposite party. In order to weaken her testimony and throw the balance in favor of his, he tendered in evidence the affidavit above mentioned. We think it should have been admitted. It was not an inquiry into the merits of the case, as the trial judge seemed to think, but was offered for the purpose of impeaching the credibility of the woman. What weight it might have had with the judge we can not say. If the facts deposed to were true, they tend strongly to show that the applicant was not an inexperienced, innocent girl, but rather that she was such a woman as was not at all likely to be imposed upon by the deception which she now claims was practiced upon her. Whether it was true or not, the affidavit was admissible in evidence, and the judge erred in refusing to consider it.

*Judgment reversed. All the Justices concurring.*